UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TIMOTHY HAMPTON,

    Petitioner,

v.                                                       Case No. 1:22-cv-206-AW-MJF

RICKY D. DIXON,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Timothy Hampton has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Docs. 10, 12. Hampton replied. Doc. 19. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Hampton is not entitled to habeas relief.

### I. BACKGROUND AND PROCEDURAL HISTORY

In Alachua County Circuit Court Case No. 2020-CF-10, Hampton was convicted of Battery on a Law Enforcement Officer. Doc. 12, Ex. E.[1] The trial court sentenced Hampton to five years of imprisonment. *Id*. On September 2, 2021, the Florida First District Court of Appeal ("First DCA") affirmed the judgment *per*

---

[1] Citations to the state-court record are to the lettered exhibits filed at Doc. 12.

*curiam* and without written opinion. *Hampton v. State*, No. 1D20-2946, 323 So. 3d 1255 (Fla. 1st DCA 2021) (Table) (copy at Ex. I).

On September 27, 2021, Hampton filed a *pro se* motion to modify his sentence under Florida Rule of Criminal Procedure 3.800(c). Ex. J. The trial court denied the motion on October 5, 2021. Ex. K. Hampton did not appeal. Doc. 1 at 6.[2]

Hampton filed his federal habeas petition on August 9, 2022. Doc. 1. Hampton raises one claim—the trial court violated his right to due process when it denied his request to delay sentencing to secure character witnesses in support of mitigation. The State asserts that Hampton is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10.

## II. SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[2] Citations to page numbers of Hampton's petition are according to the original document.

[3] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court applies an objective standard. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for

---

O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

### III. Discussion

**Ground One**     **"The Trial Court Violated Mr. Hampton's 6th and 14th Amendment Right To Due Process By Denying Him The Right To Call Witnesses At His Sentencing Hearing." Doc. 1 at 6.**

Hampton claims that the trial court violated his right to due process when it denied his request to delay sentencing to enable him to produce family members and a former employer to present mitigation testimony. Doc. 1 at 6; Doc. 19. Hampton presented this claim in his state-court direct appeal. Ex. G. Hampton's appellate counsel identified *Mathews v. Eldridge*, 424 U.S. 319, 333 (1979)—which, in turn, quoted *Armstrong v. Manzo*, 380 U.S. 545 (1965)—as the controlling law governing the federal constitutional aspect of Hampton's due-process claim. Ex. G at 7-11.[4]

The First DCA summarily affirmed without explanation. Ex. I. The First DCA's summary affirmance is an "adjudication on the merits" of Hampton's claim and, therefore, is subject to § 2254(d)'s deferential standard of review. *See Richter*,

---

[4] Hampton's direct-appeal brief also argued that the trial court's ruling violated state law. Ex. G.

562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Applying the deference required by the AEDPA, the First DCA's rejection of Hampton's due-process claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Supreme Court has never held that the denial of a request to delay sentencing to secure character witnesses violates due process. As a result, the First DCA's summary affirmance cannot be contrary to clearly established Supreme Court precedent. *See Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be 'contrary to clearly established Federal law as determined by the U.S. Supreme Court.'" (quoting *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003))).

There is no merit to Hampton's argument that the Supreme Court's decision in *Mathews, supra*, clearly establishes that the denial of his request to delay sentencing amounts to a due process violation. *See* Doc. 19 at 6 n.9 (Habeas Reply); Doc. 12, Ex. G (Direct Appeal Br.). In *Mathews*, a plaintiff whose social security disability benefits had been terminated brought an action challenging the constitutionality of the administrative procedures established by the United States Secretary of Health, Education and Welfare for assessing the existence of a

continuing disability. The Supreme Court held that the Secretary's administrative procedures for such termination fully comported with due process. *Mathews*, 424 U.S. at 349. The Supreme Court reiterated that, "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552).

The *Mathews* Court emphasized that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 334 (quotation omitted). Rather, "due process is flexible, and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation omitted). The Court held that in determining the administrative protections required before the government may deprive an individual of a liberty or property interest, courts must consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Because *Mathews* did not consider whether the denial of a request to delay sentencing to secure character-witness mitigation testimony constituted a due

process violation, that case arguably does not constitute clearly established federal law governing Hampton's claim. *See Fotopoulous v. Sec'y, Dep't of Corr.*, 516 F.3d 1229, 1234-35 (11th Cir. 2008). But even assuming *Mathews* constitutes clearly established federal law, the First DCA's decision was not contrary to *Mathews*, because the facts of this case are not materially indistinguishable from the facts in *Mathews*.

Likewise, the First DCA's decision was not an unreasonable application of *Mathews*. The Supreme Court's statement in *Mathews*—that due process requires only "such procedural protections as the particular situation demands"—is a fairly general rule. *Mathews*, 424 U.S. at 334. Because *Mathews* announced a general rule, the First DCA had "more leeway" in denying Hampton's due process claim. *See Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1326 (11th Cir. 2013) (explaining that the more general the rule announced by the Supreme Court, the "more leeway courts have in reaching outcomes in case-by-case determinations." (quotation omitted)).

These are the particular circumstances of Hampton's sentencing. After the verdict was read and the jury had been discharged, the trial judge asked defense counsel if there was any reason not to proceed to sentencing. Ex. C at 197. This exchange followed:

MR. FLYNN [Defense Counsel]: Your Honor, we would ask for a sentencing date just so we have an opportunity to speak with Mr. Hampton to ensure that any mitigation that we'd like to present is available.

THE COURT: Well, is there a way, Mr. Flynn, to have a brief conversation with him now just to see what that may entail? It may help me in my decision.

So you all can be seated and be at ease. I'm going to go off the record and let you have that discussion so the mics aren't hot, and then just let me know when you're ready.

(Recess was taken.)

THE COURT: All right, We're back on the record in State v. Timothy Hampton. Mr. Hampton is present with counsel, state is present with counsel.

Mr. Flynn?

MR. FLYNN: Your Honor, we would ask if your Honor would consider the October 21st date for a sentencing on the change of plea docket. I believe there are two witnesses that we would like to call for brief mitigation.

THE COURT: Is there – and the state doesn't wish to be heard on the sentencing? I mean, sentencing date, time, whether we do it now or –

MR. CHANG [Prosecutor]: Well, I would prefer we do it now. I'm not going to make a recommendation as to what he should be sentenced to, but given his history, I will defer to the court as to what sentence the court should impose, but I don't see any reason to put it off. It is what it is.

THE COURT: Mr. Flynn, I think I'm inclined at this time to proceed to sentencing unless there's a legal reason not to. I'm happy to give you an opportunity, if there's contact information, to see if you can reach out to those folks and if we can set up Zoom, or I'm happy to receive a

proffer, or the other option always is, depending on the nature of that testimony, you always have the option to ask me to reconsider sentencing. But just given the fact that the case was set for trial, and typically absent some legal reason not to at the conclusion of a trial, I usually intend to proceed to sentencing.

MR. FLYNN:  Yes, your Honor.

MS. HADDAD [Defense Co-Counsel]:  Your Honor, could we have just one court date?

THE COURT: I'm not inclined to pass it off for a sentencing after a trial unless I would have some other more compelling reason.

MS. HADDAD:  Mitigation.

THE COURT:  Like I said, I'm happy to – give me some idea what that mitigation is.

MR. FLYNN:  Your Honor, the folks that we would intend to call would be mainly an employer that could testify to Mr. Hampton's character and his conduct while he's been employed there. We would also have family members who would testify to Mr. Hampton's impact and his absence's impact on the family.

THE COURT:  And do you want an opportunity to see if any of them are available now?

MR. FLYNN:  I can attempt to make a call, your Honor, yes.

THE COURT:  Do that, because I don't think I'm inclined to continue the sentencing.

. . . .

MR. FLYNN:  And I believe Ms. Haddad is wrapping up this last call, your Honor. We would anticipate two folks attempting to call in, and then I would briefly reference the prior testimony. Obviously Officer

Fricke is not here. Just a few things that he mentioned during the course of the deposition regarding sentencing.

. . . .

MS. HADDAD: Your Honor, we're not ready to proceed. We're going to object to the court proceeding to sentencing right now. We have no opportunity to present mitigation. I'm on the phone within three minutes of trying to call people to present mitigation. I'm trying to get ahold of his sister, his employer, Rod Smith, who called our office several months ago to speak on Mr. Hampton's behalf. I'm trying my best to get ahold of all of those people. I gave them the number which was given to me of 374-3648.

THE COURT: Well, the trial didn't sneak up on us. We set it at least three weeks ago. We knew it was going to be one of the primary cases. Is there any reason we weren't prepared in lieu of the verdict?

MS. HADDAD: Your Honor, I'm not – I'm just surprised when someone is found guilty they don't have an opportunity to present mitigation.

THE COURT: Ms. Haddad, they do. Just so it's clear, they have opportunity. It's the day of the trial. It's the day of the outcome. I understand what you're asking for. I mean, the case can be passed until it's ready for trial and we go to trial, and if there's a guilty – I understand you're asking me now to pass it off for another day for sentencing, and what I'm indicating is I think, generally speaking, there shouldn't be surprise, because it's always been clear to folks that the trial date is the conclusion of the case date, and absent something extraordinary in terms of mitigation, the mitigation would need to be ready to go on that day.

MS. HADDAD: If I understand – and I'm not trying to be rude or short with the court. I'm just trying to understand. Anybody who's found guilty in this courtroom is supposed to proceed to sentencing after they're found guilty?

> THE COURT: Everybody whose case goes to trial, if they're found guilty, they should be prepared to move forward to sentencing, unless there's some legal grounds not to or if there's something extraordinary in terms of the mitigation, they should be prepared to.
>
> So I'm just taking a quick look. I don't know what anyone's going to argue. The state said they're not going to make any arguments as to sentencing. So I'm just looking at what's before me and trying to give you all an opportunity if you want to present – it doesn't mean you still don't have some ability after today to file – the Criminal Rules of Procedure afford you an opportunity to ask the court to reevaluate that sentencing if you think there's something that you aren't adequately able to represent to me.
>
> But prior to the short break to allow you all to make the calls, I was specifically told an employer who could talk about his character and some family members who would talk about what his absence would mean to them. So what I'm saying is, yes, in light of this particular case, that would not be something that I'm going to continue the sentencing for. So I understand you object. I respect that. The objection is noted, but I would overrule that objection.

Ex. C at 197-204; *see also* Fla. R. Crim. P. 3.800(c) (allowing a court to reduce or modify a legal sentence).

Mr. Flynn informed the court that Officer Fricke (the victim) and Hampton's employer and family members would testify "that clearly the root of Mr. Hampton's evils in terms of actions is his substance abuse issue." Ex. C at 204. Hampton then addressed the court personally. Hampton described his difficulties as a young man, including his prior non-violent criminal history. Hampton also described his chronic struggle with alcohol abuse. Hampton emphasized that he always had steady employment and took care of his family, and that his parents were in their 80's. *Id*.

at 205-06. The trial judge considered Hampton's Criminal Punishment Code scoresheet as well as all of the mitigating information the defense provided.[5] The trial judge discussed the impact of all that information on his sentencing decision, and then pronounced sentence of five years of imprisonment. *Id*. at 206-10.

A fairminded jurist could agree with the First DCA's conclusion that the trial court did not deprive Hampton of due process. The trial court's decision comported with Florida law. *See* Fla. R. Crim. P. 3.720 (setting forth the requirements for a sentencing hearing—including that it be held "[a]s soon as practicable after the determination of guilt"—and outlining the limited circumstances, not present here, that constitute legal cause to delay sentencing).

Hampton had the opportunity to be heard on the issue of mitigation. Hampton's trial date had been set for weeks. Hampton was represented by counsel at the sentencing hearing. Hampton's counsel proffered the substance of Hampton's witnesses' testimony. Hampton, himself, addressed the court and outlined the same mitigating information his witnesses would have testified to, as well as additional information he deemed relevant to sentencing. The trial court considered all of that information in determining the appropriate sentence. After sentence was imposed, Hampton moved to modify his sentence to time-served plus probation and

---

[5] Hampton had *at least* 54 prior criminal convictions. Ex. C at 208-09.

substance-abuse treatment. But the only additional information Hampton provided in support of mitigation was that imprisonment exposed to him to a greater risk of contracting COVID-19. Ex. J. The trial court was unpersuaded.

For all of the reasons discussed above, the First DCA's rejection of Hampton's due-process claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the California Court of Appeal "was not contrary to or an unreasonable application of clearly established federal law."). Hampton is not entitled to habeas relief on his due-process claim.

### IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Timothy Hampton*, Alachua County Circuit Court Case No. 2020-CF-10, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Panama City, Florida, this 1st day of May, 2023.

/s/ *Michael J. Frank*
Michael J. Frank
United States Magistrate Judge

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2(B);** *see also* **28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**